UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AIG EUROPE S.A. a/s/o Unilever United States, Inc., and Conopco, Inc. d/b/a Unilever, UNILEVER UNITED STATES, INC., and CONOPCO, INC., <br><br>Plaintiffs,<br><br>- v. -<br><br>C&S WHOLESALE GROCERS, INC., and A.E.D.S LLC,<br><br>Defendants. | 21 Civ. (     )<br><br>**COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Plaintiffs, Unilever United States, Inc. and Conopco, Inc. d/b/a Unilever (collectively "Unilever") and AIG Europe S.A. ("AIG"), by and through their undersigned attorneys, allege upon information and belief as follows:

INTRODUCTION

1. This action arises from a fire ("Fire") that broke out in a tractor ("Tractor") or in the refrigeration unit of its accompanying trailer ("Trailer"), both of which were owned and operated by AEDS, LLC ("AEDS"), while the Tractor-Trailer was parked (a) in one lane of the multilane loading dock of non-party U.S. Cold Storage's facility in Hazelton, Pennsylvania ("USCS Facility") and (b) adjacent to the Facility and its loading dock.

2. AEDS had been hired by C&S Wholesale Grocers, Inc. ("C&S") to (a) pick up 323 cases of "No Sugar Added" Fudgesicle 6-12 PK (valued at $12.36 per case), 283 cases of Rainbow Popsicle 6-18 PK (valued at $17.58 per case), 1,170 cases of "Sugar Free" Orange, Cherry & Grape Popsicle 6-18 PK (valued at $17.58 per case), and 1,900 cases of "No Sugar Added" Fudgesicle 6-18 PK (valued at $17.58 per case) (collectively "Cargo"), which C&S had

1

purchased from Unilever, and (b) transport said Cargo from the USCS Facility to C&S's facility in Westfield, Massachusetts ("C&S's Facility").

3. The Fire broke out while the Cargo was being loaded into the AEDS Trailer.

4. The Fire destroyed the Cargo and also spread to and destroyed other Unilever products staged on the loading dock, in store in the USCS Facility, and stowed in other trailers parked in the vicinity of the AEDS Tractor-Trailer (collectively "Products").

5. Unilever either owned those Products or was legally responsible for them at the time they were destroyed by the Fire.

## PARTIES

6. Unilever United States, Inc. was and is a Delaware corporation with an office for the transaction of business at 800 Sylvan Avenue, Englewood Cliffs, New Jersey 07632.

7. Conopco, Inc. d/b/a UnileverConopco, Inc., was and is a New York corporation with an office for the transaction of business located at 800 Sylvan Avenue, Englewood Cliffs, New Jersey 07632.

8. Unilever United States, Inc. and Conopco, Inc. d/b/a Unilever are collectively referred to herein as "Unilever."

9. Unilever sold the Cargo to C&S but was never paid by C&S for the Cargo even though risk of loss had transferred to C&S at the time of the fire pursuant to the terms of a 5 August 2015 Customer Pick-Up Policy/Contract ("Pick-Up Contract") entered by Unilever and C&S.

10. Unilever owned or was legally responsible for the Products at the time of the Fire.

11. AIG was and is a Luxembourg corporation with an office for the transaction of business at Avenue J.F. Kennedy 35D, Luxembourg City, Luxembourg 1855.

12. AIG insured the Cargo and the Products, paid Unilever's losses resulting from the incident detailed herein, less Unilever's deductible, and is thereby subrogated to Unilever's rights to the extent of that payment.

13. Unilever and AIG bring this action on their own behalves and as agents or trustees on behalf of all having an interest in the Cargo and Products.

14. C&S Wholesale Grocers, Inc. ("C&S") was and is a Vermont corporation with an office for the transaction of business located at 7 Corporate Drive, Keene, New Hampshire 03431.

15. C&S purchased the Cargo from Unilever, had title to the Cargo and bore the risk of loss at the time of the fire, but failed to pay for the Cargo, despite due demand.

16. AEDS, LLC ("AEDS") was and is a Connecticut company with an office for the transaction of business at 412 Barbour Street, Unit 3, Hartford, Connecticut 06120.

17. AEDS was and is registered with the United States Department of Transportation as an interstate carrier with U.S.D.O.T. number 1602422.

18. AEDS is the interstate motor carrier that was hired to transport the Cargo from Hazelton, Pennsylvania to Westfield, Massachusetts.

19. AEDS maintains shipping routes through the State of Pennsylvania.

20. AEDS owned and operated the Tractor-Trailer.

## JURISDICTION & VENUE

21. This Honorable Court has subject matter jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1332 because this is an action between parties of diverse citizenship and the amount in controversy exceeds $75,000, exclusive of interest and costs.

22. This action also involves interstate transportation of goods by motor carrier. This Honorable Court has jurisdiction and venue is proper pursuant to 49 U.S.C. § 14706(d) (the "Carmack Amendment") and 28 U.S.C. § 1331.

23. This Honorable Court has personal jurisdiction over Defendants, and venue is proper pursuant to 28 U.S.C. § 1391(b)(2), because Defendants' acts or omissions giving rise to the claims discussed herein occurred within this judicial district.

## BACKGROUND

24. The Unilever-C&S Pick-Up Policy provides, in pertinent part, as follows:

**OBJECTIVE**

To provide a Customer with the opportunity to pick up their domestic U.S. order for over-the-road delivery only *without adversely affecting the Unilever operation, including the ability to deliver orders to other Customers efficiently*.

**POLICY**

Customers who wish to arrange a pickup from a designated Unilever facility are required to comply with the following policies & procedures:

**Equipment Specifications**

The Customer or, as applicable, the carrier, will be responsible for compliance with all Federal, State and local ordinances governing operation of motor carriers over streets, roads, and highways. Unilever will be responsible for loading all trailers pursuant to statutory requirements and reasonable industry practices. The following documentation must be available upon request for all . . . carrier(s):

*   *   *

- Insurance that meets local, state, and federal laws governing transportation as relevant.

Liability for persons, property and damage must be a minimum of one million dollars.

- Trailers of . . . third-party carriers must meet Unilever Equipment Standards set forth below (hereinafter Specification). . . . The Customer or Customer's carrier must supply equipment in good condition and proper size to handle the tendered load. . . .

4

\* \* \*

**Title, Transfer, Overages, Shortages & Damage**

Title, risk of damage to or loss of goods, and responsibility to file claims transfers from Unilever to the Customer at the time of pick-up, not to include claims relating to loading, unitization or packaging, the responsibility for which remains with Unilever. . . .

\* \* \*

**Indemnity**

Each party shall defend, indemnify and hold harmless the other party and its officers, directors, employees and representatives from and against all loss, damage, expense, including reasonable attorney's fees, actions and claims:

> a. for . . . damage to property (excluding loss or damage to cargo) arising out of such party's negligent acts or omissions in connection with the loading, handling, transportation, unloading or delivery of any shipment hereunder, except to the extent caused by the other party's negligence, willful misconduct;

\* \* \*

> c. resulting from such party's failure to comply with or violation of any applicable laws or regulations, including but not limited . . . vehicle and . . . safety, except to the extent such failure results from acts or omissions of the other party;

> d. for all other liability, loss and damage (excluding loss or damage to cargo) arising out of or resulting from such party's breach of this Agreement or failure to observe and enforce its duties and responsibilities hereunder, except to the extent caused by the other party's negligence or willful misconduct.

Pick-Up Contract, attached as Exhibit 1, pp. 1, 4, 6.

25. In July 2019, Unilever agreed to sell, and C&S agreed to buy, the Cargo for $60,798.14 pursuant to Invoice No. 9841120062 and C&S agreed to pick up the Cargo from the USCS Facility pursuant to the terms of the Pick-Up Contract.

5

26. Thereafter, C&S hired AEDS to pick up the Cargo at the USCS Facility and transport it to C&S's Facility.

27. On 9 July 2019, AEDS, in consideration of certain agreed freight charges, arrived to pick up, receive, and accept the Cargo, then in good order and condition, at USCS's facility and agreed to properly and adequately carry, keep, care for, discharge and deliver the Cargo to C&S's Facility.

28. After AEDS's pick-up commenced, loading of the Cargo into the Trailer was initiated.

29. Loading was interrupted, at approximately 15:20 EDT, when the Fire broke out in the AEDS Tractor-Trailer, by no fault of Unilever.

30. The Fire quickly spread from AEDS's Tractor-Trailer to the loading dock, to portions of the USCS Facility, and to additional trailers at adjacent loading docks.

31. The Fire was caused by defects in the AEDS Tractor-Trailer and thus C&S's failure to abide its obligation to "supply equipment in good condition . . . to handle the tendered load."  Pick-Up Contract

32. Before the Fire, the Cargo and the Products were in good order and condition.

33. The Fire destroyed the Cargo and the Products.

34. Notwithstanding the fact that title to the Cargo and risk of loss had transferred to C&S at the time of the Fire pursuant to the Pick-Up Contract's *Title, Transfer, Overages, Shortages & Damage* Clause, C&S refused to pay for the Cargo, despite due demand.

35. Notwithstanding C&S's contractual obligation to ensure that AEDS maintained insurance "for persons, property, and damage [with] a minimum of one million dollars" (Pick-Up

Contract, *Equipment Specification* Clause), AEDS did not, in fact, maintain such contractually mandated insurance coverage.

36. Notwithstanding C&S's contractual obligation to "supply equipment in good condition . . . to handle the tendered load" (Pick-Up Contract, *Equipment Specification* Clause), the Tractor-Trailer were not in good condition as evidenced by the fact that the Fire ignited therein, without the fault of Unilever.

37. Notwithstanding C&S's contractual obligation to "pick up [its] domestic U.S. orders for over-the-road delivery only without adversely affecting the Unilever operation, including the ability to deliver orders to other Customers" (Pick-Up Contract, *Objective* Clause), C&S did adversely affect Unilever's operation, including its ability to deliver orders to other Customers, by hiring AEDS and AEDS's defective Tractor-Trailer.

38. As a result of the Fire's destruction of the Cargo and C&S's refusal to pay for the Cargo, Unilever suffered damages totaling $60,798.14, the invoice value of the Cargo.

39. As a result of the Fire's destruction of the Products, Unilever suffered losses totaling $170,325.86, as nearly as can now be determined.

40. Unilever submitted a claim to AIG for all of its losses sustained on account of the Fire, totaling $231,124, and AIG paid Unilever's losses, less Unilever's deductible, to settle said claim.

41. AIG thereby became subrogated Unilever's rights to the extent of that payment.

42. Unilever retains uninsured losses in the amount of its deductible.

FIRST CAUSE OF ACTION AGAINST C&S –<br><u>BREACH OF CONTRACT</u>

43. Paragraphs 1 through 42 are incorporated by reference as though fully set forth at length herein.

44. Unilever entered into a valid and enforceable contract with C&S pursuant to which C&S was obliged to: (1) "pick up [its] domestic U.S. orders for over-the-road delivery only without adversely affecting the Unilever operation, including the ability to deliver orders to other Customers", Pick-Up Contract, *Objective* Clause; (2) ensure that AEDS maintained insurance "for persons, property, and damage [with] a minimum of one million dollars," *Id*. at *Equipment Specification* Clause; (3) "supply equipment in good condition . . . to handle the tendered load", *Id*.; (4) assume "[t]itle [and] risk of loss of [the Cargo] . . . at the time of pick up," *Id*. at *Title, Transfer, Overages, Shortages & Damage* Clause.

45. Unilever performed all of its obligations under the Pick-Up Contract by, *inter alia*, allowing C&S to pick up the Cargo and by tendering the Cargo, in good order and condition, to AEDS, C&S's nominated inland motor carrier, at the USCS Facility.

46. C&S breached the Pick-Up Contract by (1) hiring AEDS as its agent-carrier, whose Tractor-Trailer caused the Fire, which – in turn – "adversely affect[ed] the Unilever operation, including [its] ability to deliver orders to other Customers," (2) failing to ensure that AEDS maintained insurance "for persons, property, and damage [with] a minimum of one million dollars," (3) failing to "supply equipment in good condition . . . to handle the tendered load," and (4) refusing to pay for the Cargo despite due demand even though it had assumed title and risk of loss thereto pursuant to the Pick-Up Contract's *Title, Transfer, Overages, Shortages & Damage* Clause.

47. As a direct and proximate result of C&S's breaches of the Pick-Up Contract, Plaintiffs sustained damages, as nearly can now be determined, no part of which has been paid although duly demanded, damages totaling $60,798.14, the invoice value of the Cargo.

## SECOND CAUSE OF ACTION AGAINST C&S – CONTRACTUAL INDEMNITFICATION

48. Paragraphs 1 through 47 are incorporated by reference as though fully set forth at length herein.

49. Unilever entered into a valid and enforceable contract with C&S pursuant to which C&S agreed to "defend, indemnify and hold [Unilever] harmless . . . from and against all loss, damage, expense, including reasonable attorney's fees . . .

   a. for . . . damage to property (excluding loss or damage to cargo) arising out of such party's negligent acts or omissions in connection with the loading, handling, transportation, unloading or delivery of any shipment hereunder, except to the extent caused by the other party's negligence, willful misconduct;

   \* \* \*

   c. resulting from such party's failure to comply with or violation of any applicable laws or regulations, including but not limited . . . vehicle and . . . safety, except to the extent such failure results from acts or omissions of the other party;

   d. for all other liability, loss and damage (excluding loss or damage to cargo) arising out of or resulting from such party's breach of this Agreement or failure to observe and enforce its duties and responsibilities hereunder, except to the extent caused by the other party's negligence or willful misconduct.

50. AEDS was C&S's nominated agent-carrier for the purposes of picking up the Cargo.

51. The Fire was caused by AEDS's negligence with respect to maintaining and operating the Tractor-Trailer.

52. Because AEDS was C&S's agent carrier, C&S must answer for AEDS's negligence.

53. As explained in Paragraphs 43-47, the Fire resulted on account of C&S's failure to "supply equipment in good condition . . . to handle the tendered load breached."

9

54. That is, the Fire resulted from C&S's "breach of th[e] [Pick-Up Contract] [and] failure to observe and enforce its duties and responsibilities [t]hereunder."

55. The Fire caused the damage to the Products.

56. Therefore, Plaintiffs are entitled to indemnification and to be held harmless by C&S for the "loss, damage, expense, including reasonable attorney's fees" incurred by them on account of the Fire.

57. Despite due demand, C&S had failed to indemnify and hold Plaintiffs harmless for the "loss, damage, expense, including reasonable attorney's fees" incurred by them on account of the Fire, in breach of its obligations under the Pick-Up Contract's *Indemnifications* Clause.

58. As a direct and proximate result of C&S's of its obligations under the Pick-Up Contract's *Indemnifications* Clause, Plaintiffs sustained damages, as nearly can now be determined, no part of which has been paid although duly demanded, damages totaling $170,325.86 plus their attorney's fees, costs, and expenses of this action.

CAUSE OF ACTION AGAINST AEDS –
BREACH OF CONTRACT OF MOTOR CARRIAGE

59. Paragraphs 1 through 58 are incorporated by reference as though fully set forth at length herein.

60. As motor carrier of goods for hire, AEDS was obligated by the Carmack Amendment to properly and safely transport, handle, carry, keep, care for, discharge, and deliver the Cargo in the same good order and condition as when received by it.

61. AEDS breached those duties by failing to deliver the Cargo in the same good order and condition as when received by it and instead allowing the Fire to ignite in its Tractor-Trailer, which – in turn – destroyed the Cargo.

62.     As a direct and proximate cause of AEDS's breach of its duties under the Carmack Amendment, Plaintiffs sustained damages, as nearly can now be determined, no part of which has been paid although duly demanded, in the sum of $60,798.14, the invoice value of the Cargo.

### SECOND CAUSE OF ACTION AGAINST AEDS – NEGLIGENCE

63.     Paragraphs 1 through 62 are incorporated by reference as though fully set forth at length herein.

64.     AEDS owed Unilever a duty imposed by common law to exercise reasonable care in the oversight, carriage, discharge, and delivery of the Cargo in accordance with applicable standards, customs, best practices, regulations, codes, and/or ordinances to avoid creating a risk of damage and/or harm to nearby property, including the Property.

65.     AEDS knew or should have known that its failure to exercise due and reasonable care would result in an unreasonable risk of damage and/or harm to nearby property, including the Property.

66.     The above-detailed damage to the Property and expenses incurred relative thereto were proximately caused by and resulted from the negligent, and/or careless acts and/or omissions of AEDS and/or the negligent and/or careless acts and/or omissions of AEDS' employees.

67.     Said acts and/or omissions include:

   a.     Failure to properly and adequately carry, keep, care for, discharge and deliver the Cargo;

   b.     Failure to carefully and adequately combat the Fire detailed herein;

   c.     Failure to maintain and operate the Tractor-Trailer in a manner to prevent the risk of fire;

   d.     Failure to maintain and have readily available the proper and compatible equipment required to combat the fire detailed herein;

11

      e.      Failure to promptly notify the requisite authorities in order to properly combat the fire detailed herein;

      f.      Failure to exercise due care in other ways that discovery may disclose.

68.    As a direct and proximate result of the above-referenced negligent and/or careless acts and/or omissions of AEDS, the Property was damaged, as nearly as can now be determined, no part of which has been paid although duly demanded, in the sum of $170,325.86.

WHEREFORE, Plaintiffs demand judgment in their favor and against Defendants in the sum of $231,124, plus interest thereon, their attorney's fees, the costs and disbursements of this action, and such other and further relief as this Court may deem just and proper.

### JURY TRIAL DEMAND

Plaintiffs hereby demand a jury trial on all issues so triable.

Dated:  July 9, 2021                            DICKIE, MCCAMEY & CHILCOTE, P.C.
                                                  Attorneys for Plaintiffs

By:  */s/ Steven W. Zoffer*

Steven W. Zoffer, Esq. (PA I.D. 62497)
Paul A. Roman, Esq.  (PA I.D. 318855)
Two PPG Place, Suite 400
Pittsburgh, PA 15222-5402
Telephone: (412) 281-7272
Facsimile: (412) 392-5367